# Arnold&Porter

**Christopher M. Odell**
+1 713.576.2401 Direct
Christopher.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: **11/17/2023**

November 9, 2023

**VIA ECF**

## MEMO ENDORSED

Honorable Jennifer H. Rearden
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

    Re:    *Kristi Vuksanovich, et ano. v. Airbus Americas, Inc.*, et al., 1:21-cv-03454-JHR
            Local Civil Rule 37.2 Letter-Motion regarding Recently Discovered Deficiencies
            in Plaintiffs' Document Production

Dear Judge Rearden:

We write on behalf of Defendants Airbus Americas, Inc. and Airbus S.A.S. (collectively, "Defendants") in the above-captioned matter. Pursuant to Rule 37.2 of the Local Rules of the Southern District of New York and Section 3.C of this Court's Individual Rules, Defendants request an informal conference to address recently discovered deficiencies in Plaintiffs Kristi and Mark Vuksanovich's document production in response to Defendants' First Set of Requests for Production, served September 7, 2022. Counsel conferred virtually on November 9, 2023 but were unable to resolve the issues in this letter-motion.

Although fact discovery does not end until February 16, 2024, Defendants submit this letter-motion now in light of Plaintiffs' recent confirmation about discovery deficiencies, including failures to collect, produce, and preserve potentially relevant material, and the Court's briefing schedule on Defendants' summary judgment motion on limitations. Dkt. 121.

---

**Arnold & Porter Kaye Scholer LLP**
700 Louisiana Street, Suite 4000 | Houston, TX 77002-2755 | **www.arnoldporter.com**

# Arnold&Porter

Honorable Jennifer H. Rearden
November 9, 2023
Page 2

## I.      Background

More than a year since Defendants served their September 7, 2022 First Set of Requests for Production, Ms. Vuksanovich has produced approximately 75 documents, and Mr. Vuksanovich has produced fewer than 20, nearly all of which are screenshots of links he shared on Facebook.  Defendants, on the other hand, have produced more than 70,000 documents – incurring significant e-discovery costs.  On August 2, 2023, counsel for Plaintiffs told Defendants via email that "we don't have any further documents to produce."

Relying on that representation, Defendants scheduled oral depositions of Ms. Vuksanovich (September 20, 2023) and Mr. Vuksanovich (November 3, 2023) and thereafter requested leave to file a summary judgment motion on the statute of limitations, which the Court granted on October 31, 2023, *see* Dkt. 121. Meanwhile, Defendants proceeded with Mr. Vuksanovich's November 3 deposition, relying on Plaintiffs' counsel's November 1 representation that there are only "a very limited number of documents in Mr. Vuksanovich's possession, almost all of which are instances in which he simply shared articles on his Facebook page." Dkt. 122 at 1.

But Mr. Vuksanovich's deposition testimony established that this representation was incorrect, and that Plaintiffs were allowed to self-collect documents without adequate instruction or oversight, possess potentially relevant responsive documents, and likely spoliated other responsive material. Although Mr. Vuksanovich testified he was instructed orally "not to destroy documents" (Ex. 1 at 12:5–10), he did not recall receiving any written guidance whatsoever on preserving or collecting responsive documents (Ex. 1 at 11:7–9). He testified that when he received

# Arnold & Porter

Honorable Jennifer H. Rearden
November 9, 2023
Page 3

Defendants' requests in September 2022, he did not search for documents (Ex. 1 at 25:12–23) and

that he has never received or used search terms to identify responsive text messages or emails (Ex.

1 at 27:4–15). He has never reviewed his text messages from 2017, 2018, 2019, or 2020, and is

unsure whether they still exist. Ex. 1 at 25:12–27:3. He never preserved his or his wife's

handwritten notes. Ex. 1 at 21:15–22:18. He deleted social media posts but is unable to recall

whether any of the deleted posts were responsive. Ex. 1 at 16:4–17:16. And, Plaintiffs have an

unknown number of responsive, highly relevant texts (Ex. 1 at 36:15–38:16, 40:2–41:14),

handwritten notes (Ex. 1 at 21:15–22:18, 23:7–13, 75:2–24) and at least one letter (Ex. 1 at 123:2–

12) that have not been collected or produced.

Plaintiffs' failures to fully comply with their discovery obligations is improper and wholly

unjustified. As explained below, the Court should order Plaintiffs to comply immediately with

their discovery obligations and to search for and produce all potentially responsive documents.

## II. Request That Plaintiffs Should Be Ordered To Search For and Produce All Responsive Documents Including Those Identified In Mr. Vuksanovich's Deposition

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any

party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "A party seeking discovery may move for

an order compelling an answer, designation, production, or inspection" when "a party fails to

produce documents." Fed. R. Civ. P. 37(a)(3)(B). Defendants request an order compelling

Plaintiffs to search for and produce responsive documents from their email, phones, and other

sources, including the responsive documents Mr. Vuksanovich identified during his oral

deposition:

# Arnold & Porter

Honorable Jennifer H. Rearden
November 9, 2023
Page 4

**Text Messages**: Plaintiffs promised to produce responsive text messages. *See, e.g.*, Ex. 2 at Response to Request No. 9 (medical diagnoses), 18 (incidents in complaint and claims in litigation), No. 19 (cabin air quality), No. 20 (work attendance), No. 21 (effects on the marriage), No. 32 (alleged fume events). But Mrs. Vuksanovich has produced fewer than ten text exchanges, and Mr. Vuksanovich none. At his November 3 deposition, Mr. Vuksanovich testified that he had never reviewed his text messages from 2017, 2018, 2019, or 2020; never applied search terms to his texts; and was unsure whether he had responsive texts. Ex. 1 at 26:4–27:15.

In fact, according to Mr. Vuksanovich, Plaintiffs never received any instructions from counsel other than "not to destroy documents," (Ex. 1 at 11:23-12:10) and even that proved inadequate, as Mr. Vuksanovich testified that he never stopped his phone from automatically deleting texts and was never told to do so. Ex. 1 at 12:23–13:10. Neither he nor his counsel has ever backed up his phone's data, and he has no idea whether texts from the critical period—2017-2020—still exist. Ex. 1 at 13:24–14:4, 24:11–25:4, 26:4-27:3. If these messages still exist, they contain responsive text messages, potentially critical to Defendants' statute-of-limitations briefing, including messages exchanged with family and friends about aircraft cabin air (Ex. 1 at 36:15–38:23) and the impact of Ms. Vuksanovich's medical condition on the Plaintiffs' marriage (Ex. 1 at 40:2-41:–14).

**Handwritten Notes**: Plaintiffs also agreed to produce responsive notes. *See, e.g.*, Ex. 2 at Response to Request No. 9, No. 18, No. 19, No. 20, No. 21. Although neither Plaintiff has produced any, Mr. Vuksanovich testified that he has handwritten notes "relat[ed] to [his]

**Arnold & Porter**

Honorable Jennifer H. Rearden
November 9, 2023
Page 5

allegations in the case"—including Ms. Vuksanovich symptoms—which he keeps "on a legal pad at home" (Ex. 1 at 21:15–22:5, 22:15–18) as well as notes from Ms. Vuksanovich's doctor meetings (Ex. 1 at 23:7–13). Asked whether he provided those notes to counsel, he responded "Not yet." Ex. 1 at 22:6–8. He also revealed that Ms. Vuksanovich keeps "very good notes of her day-to-day routine"—memorializing "schedules, appointments, what kind of things she needs to take, her regimen of supplements, conversations with her doctors"—kept in "her office." Ex. 1 at 75:2–24. These materials are responsive to the Defendants' requests.  Defendants believe these notes are likely relevant to the pending statute-of-limitations summary judgment briefing.

**Letters**: Plaintiffs also promised to produce responsive documents concerning Plaintiffs' personal injury claims. Ex. 2 at Response to Request No. 31. During his deposition, after being shown a letter that Mr. Vuksanovich wrote to one of Ms. Vuksanovich's physicians (which was produced by that physician), Mr. Vuksanovich testified that he authored another, unproduced letter to the Social Security Administration. Ex. 1 at 123:2–12. This letter and any like it are both responsive and potentially relevant to limitations and should be produced.

**III.   Defendants Request a Written Declaration Describing Plaintiffs' Efforts to Preserve, Collect, and Produce Documents Responsive to Defendants' Requests**

"In certain circumstances where a party makes some showing that a producing party's production has been incomplete, a court may order discovery designed to test the sufficiency of that party's discovery efforts in order to capture additional relevant material." *Freedman v. Weatherford Intern. Ltd*., No. 12 CIV. 2121 LAK JCF, 2014 WL 4547039, at *2 (S.D.N.Y. Sept. 12, 2014). Defendants request that Plaintiffs provide a declaration describing the steps taken to (i)

**Arnold**&**Porter**

Honorable Jennifer H. Rearden
November 9, 2023
Page 6

preserve, (ii) collect, and (iii) produce documents in their possession, custody, or control responsive to Defendants' requests.

Courts have found a sufficient factual basis for such discovery when the requesting party "provided specific examples of [the] deficient production." *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, No. 13CV2581PKCJLC, 2019 WL 3334503, at *18 (S.D.N.Y. July 25, 2019).[1] Here, as set forth in detail above, Defendants' request for a declaration is based on specific, tangible evidence of Plaintiffs' repeated material failures to meet their discovery obligations, as set forth in Mr. Vuksanovich's own testimony.

**IV. Conclusion**

Because Plaintiffs have in their possession unproduced, responsive documents highly relevant to the pending motion for summary judgment on limitations, which Defendants were not aware of until November 3, 2023 (after the Court set a briefing schedule on Defendants' summary judgment motion), Defendants request that the Court schedule an informal conference on the issues in this letter-motion so that, in the event the Court compels production from Plaintiffs as requested, the parties have sufficient time to complete the production well in advance of December 11, when briefing on Defendants' summary judgment motion closes.

---

[1] *See also Vieste, LLC v. Hill Redwood Dev*., No. C-09-04024 JSW DMR, 2011 WL 2198257, at *3–4 (N.D. Cal. June 6, 2011) (ordering defendants to submit preservation-and-collection declarations based in part on deposition testimony that attorneys failed to properly instruct defendants).

# Arnold & Porter

Honorable Jennifer H. Rearden
November 9, 2023
Page 7

APPLICATION GRANTED.  On N**ovember 22, 2023** at **3:00 p.m.,** counsel for all parties shall appear for a telephone conference regarding Defendants' November 9, 2023 letter-motion. See ECF No 123.  Counsel should join the conference by dialing 646-453-4442 and entering access code 6537 8679 followed by the pound (#) key.  Additionally, by **Monday, November 20,  2023**, Defendants shall file via ECF the full August 2, 2023 email exchange referenced in ECF Nos. 123 and 124.

SO ORDERED.

Jennifer H. Rearden, U.S.D.J.
Dated: November 17, 2023

Respectfully submitted,

/s/ Christopher M. Odell
Christopher M. Odell
christopher.odell@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana St., Ste. 4000
Houston, Texas 77098
T: (713) 576-2400
F: (713) 576-2499
*Admitted pro hac vice*

Diana Sterk
diana.sterk@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
250 W. 55th St.
New York, NY 10019
T: (202) 942-5000
F: (212) 836-6638

David Weiner
david.weiner@arnoldporter.com
Megan Pieper
megan.pieper@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
T: (202) 942-5000
F: (202) 942-5999
*Admitted pro hac vice*

*Attorneys for Defendants Airbus Americas, Inc. and Airbus S.A.S.*

# Exhibit 01

UNITED STATES DISTRICT COURT

SOUTHERNDISTRICT OF NEW YORK

Case No. 21-cv-3454-KPF

- - - - - - - - - - - - - - - - - - - - - - - - - -x

KRISTI VUKSANOVICH and MARK VUKSANOVICH,

                              Plaintiffs,

          -against-

AIRBUS AMERICAS, INC., and AIRBUS S.A.S.,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - -x


     VIDEO DEPOSITION OF MARK VUKSANOVICH
            NEW YORK, NEW YORK
          FRIDAY, NOVEMBER 3, 2023

REPORTED BY:

DANIELLE GRANT

JOB NO.: 6154785

Veritext Legal Solutions
346-293-7000

```
 1              MARK VUKSANOVICH
 2   attorney about filing this matter, were you
 3   provided with any information about
 4   preserving documents or other communications
 5   in anticipation of litigation?
 6        A    Yes.
 7        Q    Were you given written direction
 8   for preserving documents?
 9        A    I can't recall.
10        Q    Were you given verbal instructions
11   for preserving documents?
12        A    Yes.
13        Q    What instructions were you given
14   about what you need to do to preserve
15   documents?
16        A    The question is the verbal
17   instructions?
18        Q    So is my understanding correct
19   that you don't recall if there were
20   instructions in writing?
21        A    I don't recall if there was
22   instructions in writing.
23        Q    So my question is, like, what were
24   you instructed to do verbally if you recall
25   it, or in general, even, you know, if it was
```

```
 1                    MARK VUKSANOVICH
 2   in writing and you recall the instruction
 3   but not the form, what were you instructed
 4   to do?
 5        A    As I recall the conversation, I
 6   was asked not to destroy documents, not to
 7   make any changes or anything out of the norm
 8   that would interfere with our ability to
 9   file the lawsuit.  That's the conversation
10   that I recall.
11              VIDEOGRAPHER:  And I don't get
12        into any more content.
13              MR. FALVEY:  Right.  I understand.
14        I saw where you were going.
15              MS. PIEPER:  Yeah.
16              MR. FALVEY:  You were careful.
17              THE WITNESS:  Okay.
18        Q    And what did you do in order to
19   preserve your documents and communications
20   related to this lawsuit?
21        A    It was just a conscious
22   understanding, that's how I understood it.
23        Q    Did you ensure that your phone
24   would not automatically delete old text
25   messages?
```

Page 12

MARK VUKSANOVICH

1

2      A      No.

3      Q      Were you instructed to take a look

4  at your phone setting for retaining text

5  communications?

6      A      Not specifically.

7      Q      Do you happen to know if your

8  phone's settings retain text messages in

9  perpetuity?

10      A      I'm not positive.

11      Q      And did you take any affirmative

12  steps to preserve text messages?

13      A      No.

14      Q      Okay.  So just to make sure I

15  understand, you don't know if, for example,

16  your phone deletes text messages after a

17  year?

18      A      Correct.  I do not know if that

19  setting is enabled.

20      Q      And do you know whether you

21  currently have on your phone text messages

22  that go back to any specific date?

23      A      No.

24      Q      Did anybody image your phone or

25  back up the data that was on your phone in

MARK VUKSANOVICH

1

2  order to make sure the data was preserved on

3  your device?

4          A    No.

5          Q    Okay.  Did you take any

6  affirmative steps to retain communications

7  sent to you via social media?

8          A    Yes.

9          Q    What did you do there?

10         A    I didn't delete anything.

11         Q    Okay.  So for example, you have

12 retained all of your social media accounts;

13 is that fair?

14         A    Yes.

15         Q    So you didn't have any social

16 media accounts at the beginning of this

17 litigation that you no longer retain?

18         A    Yes.

19         Q    And you have ensured that you did

20 not go back in time and delete anything that

21 you had posted; is that right?

22         A    No.

23         Q    Okay.  Let me -- let me make sure

24 I understand your answer to that.

25              So when you say "no," are you

MARK VUKSANOVICH

1

2      saying, No, you have not deleted anything?

3          A     I'm saying, no, there have been

4      times that I have looked at my social media

5      and links did not work on some of my

6      previous posts, so those were removed.  They

7      were just blank entries on a social media

8      post.  My social media is only to my friends

9      and family.  It's not like I'm posting to

10     the world.

11         Q     Understood.  You're not an

12     influencer?

13         A     Correct.

14         Q     Were any of the posts that you

15     deleted on your social media, regardless of

16     whether the links worked or not, related, in

17     any way, to the allegations in this case?

18             MR. FALVEY:  Objection.  I think

19         that's a mischaracterizations of what

20         he said.  He never said he deleted

21         anything on this line of questioning at

22         least.

23             MS. PIEPER:  I'm sorry.

24             MR. FALVEY:  He said the link

25         expired.

Veritext Legal Solutions
346-293-7000

```
1                    MARK VUKSANOVICH
2        Q    Okay.  So let me make sure I
3   understand.
4             You said you have gone back
5   through your social media, correct?
6        A    Correct.
7        Q    And some of the links no longer
8   work if you click them.
9             Is that a fair way to characterize
10  it?
11       A    Yes.
12       Q    Did -- do you delete those posts
13  if the links failed to work?
14       A    Yes.
15       Q    Okay.  Were any of the posts that
16  were deleted related to cabin air quality?
17       A    I'm not sure.
18       Q    Were any of the posts that were
19  deleted related to any conditions or
20  symptoms that your wife alleges she has
21  experienced in this litigation?
22       A    I do not post those things on my
23  social media --
24       Q    Okay.
25       A    -- related to my wife.
```

```
 1                    MARK VUKSANOVICH
 2        Q    So to make sure I understand, you
 3   do not share, via social media, about your
 4   wife's health?
 5        A    Not my wife's health.
 6        Q    You have possibly shared, and
 7   based on your production I can represent
 8   have shared, information related to the
 9   allegations in this case, correct?
10        A    Yes.
11        Q    And you're not sure if any of the
12   expired links that you've removed from your
13   social media were also related to the
14   allegations --
15        A    Correct.
16        Q    -- in this case?
17             When was the last time that you
18   replaced your laptop?
19        A    2000 -- my -- 2011, my personal
20   laptop, I think is -- but I don't use it.
21   It's been collecting dust.
22        Q    Understood.  And do you use your
23   work computer for collecting information
24   related to your allegations in this case?
25        A    No.
```

Page 17

```
1                    MARK VUKSANOVICH
2       Q    Do you save any files on your work
3  computer related to your allegations in --
4       A    No.
5       Q    -- this case?
6            When was the last time you
7  replaced your phone?
8       A    I can't recall the specific date.
9       Q    Have you had your current phone
10  for six years?
11      A    No.
12      Q    Have you had your current phone
13  for longer than four years?
14      A    Possibly.
15      Q    Possibly.
16           If I were to ask you to give a
17  best estimate of when you purchased your
18  current phone, what would your best estimate
19  be?
20      A    I would say somewhere in the
21  2019-2020.
22      Q    Okay.  Do you still own the phone
23  that you had prior --
24      A    No.
25      Q    -- to this current phone?
```

```
 1                    MARK VUKSANOVICH
 2           Did you trade it in?
 3      A    Yes.
 4      Q    Did you or your -- did you do
 5  anything to preserve the data on that phone
 6  when it was traded in?
 7      A    I did a backup.
 8      Q    And were all of the files saved on
 9  that phone backed up?
10      A    I believe so.
11      Q    Did that include photos?
12      A    I'm not sure.  I can't recall.
13      Q    Do you know if the files that were
14  backed up on that phone were transferred to
15  your new device?
16      A    I can't confirm that.
17      Q    Do you know if text messages were
18  backed up when you did --
19      A    Text messages --
20      Q    -- that back up?
21      A    -- I believe so, yes.
22      Q    Do you know if they were
23  transferred to your new device?
24      A    I can't confirm that.  I mean,
25  when I did the transfer, I saw my text
```

                    MARK VUKSANOVICH

1    messages transferred over.

2            Did I look through and ensure they

3    were all there?

4            No.

5        Q    Okay.  Understood.  So you're not

6    sure if something could have -- there could

7    have been an error in the transmission?

8            As a --

9        A    Correct.

10       Q    -- general matter, your text

11   messages were transferred?

12       A    As I understand, yes.

13       Q    And, as a general matter, were

14   your photos transferred?

15       A    As I understand, yes.

16       Q    Did -- so you backed up the phone

17   when you last replaced it, correct?

18       A    Yes.

19       Q    Do you have ongoing backups of

20   your device?

21       A    I'm not sure.

22       Q    Okay.  What type of phone do you

23   use?

24       A    It's an iPhone.

                                    Page 20

```
  1                    MARK VUKSANOVICH

  2        Q     Do you know the model?

  3        A     Not specifically, no.

  4        Q     Okay.  Have you ever done Internet

  5   research related to your allegations in this

  6   case?

  7        A     Yes.

  8        Q     What device do you use when you do

  9   Internet research?

 10        A     My phone.

 11        Q     And have you taken any affirmative

 12   steps to retain Internet browser or search

 13   histories on your phone?

 14        A     No.

 15        Q     Do you save any handwritten notes?

 16        A     Can you be more specific?

 17        Q     Yeah.  Let me ask a better

 18   question.

 19              That was -- have you taken any

 20   notes that relate to your allegations in

 21   this case?

 22        A     Yes.

 23        Q     Have you saved those notes?

 24        A     Yes.

 25        Q     Where did you take those notes?
```

Veritext Legal Solutions
346-293-7000

```
 1                      MARK VUKSANOVICH
 2        A     On a legal pad at home.
 3        Q     Yeah.  Where is the legal pad
 4   stored?
 5        A     At home.
 6        Q     Have you provided those legal pads
 7   to your attorneys?
 8        A     Not yet.
 9        Q     Okay.  Would you be able to access
10   those?
11        A     Yes.
12        Q     Have you taken handwritten notes
13   in any place other than the legal pad?
14        A     No.
15        Q     Have the notes you have taken on
16   the legal pad related to your wife's
17   symptoms?
18        A     Yes.
19        Q     Have you taken any notes related
20   to this case other than direction or
21   information provided to you by attorneys?
22        A     No.
23        Q     Have you taken notes in any
24   doctor's meetings?
25        A      In the doctor's meeting or after?
```

Page 22

```
 1                  MARK VUKSANOVICH
 2        Q    Well, we'll start with the first
 3   one.
 4             Have you taken notes inside any
 5   doctor's meetings?
 6        A    No.
 7        Q    Have you taken notes following
 8   doctor's meetings?
 9        A    Yes.
10        Q    Were any of those notes for any
11   purpose other than providing information to
12   counsel?
13        A    Yes.
14        Q    Okay.  Have you taken notes
15   related to your allegations of air toxic
16   syndrome in your notepad?
17        A    No.
18        Q    Okay.  When you have -- okay.
19   Actually, scratch that.
20             MS. PIEPER:  I'm going to put our
21        first exhibit on the record.  This is
22        going to be marked as Exhibit Number 1.
23                 (Whereupon, the Defendants' First
24                 Request for the Production of
25                 Documents was marked as Deposition
```

```
 1                    MARK VUKSANOVICH
 2              Exhibit No. 1 for identification, as
 3              of this date.)
 4         MS. PIEPER:  So for the record, we
 5     have just put on Exhibit Number 1.
 6     This was Defendants' First Request for
 7     the Production of Documents.
 8         Q    Mr. Vuksanovich have you seen this
 9  before?
10         A    Yes.
11         Q    Okay.  If you flip to the last
12  page, you'll see it has a "12" at the
13  bottom, you can see, under the certificate
14  of service, that this was sent to your
15  attorneys in September of 2022.
16              Do you see that?
17         A    I see the date, yes.
18         Q    Do you recall receiving these at
19  that time?
20         A    To the best of my knowledge, yes.
21  I do recall it wasn't actually that date.
22  The date was a little different than when we
23  actually received it in the email, this one
24  in particular I believe.
25         Q    And -- okay.  So maybe not on
```

Page 24

```
 1                    MARK VUKSANOVICH
 2    September 7th, but would you have received
 3    it, like, in September of 2022?
 4         A    Yes.
 5         Q    Understood.  Sometimes, attorneys
 6    go home at night and go back --
 7              MR. FALVEY:  Once in a while.
 8         Q    -- to work the next day.
 9              MS. PIEPER:  Occasionally,
10         attorneys go home at night.  Fair
11         enough.
12         Q    What did you do at that time, that
13    is in September of 2022, in efforts to
14    respond to these?
15         A    Can you be more specific?
16         Q    Sure.  Did you, in or around
17    September of 2022, search for documents?
18         A    Not specifically.
19         Q    Did you make any efforts, in or
20    around September 2022, to review your text
21    messages to identify ones related to this
22    litigation?
23         A    Not specifically, no.
24         Q    Have you, at any time, reviewed
25    your text messages to identify ones related
```

```
 1                   MARK VUKSANOVICH
 2   to this litigation?
 3        A    Yes.
 4        Q    When you did that, have you
 5   reviewed text messages from the year 2017?
 6        A    No.
 7        Q    Do you still have your text
 8   messages from the year 2017?
 9        A    I'm not positive.
10        Q    Did you review text messages from
11   the year 2018?
12        A    I'm not positive.
13        Q    Do you know if you have text
14   messages from the year 2018?
15        A    No.  I don't -- I don't know.
16        Q    Understood.  Did you review text
17   messages from the year 2019?
18        A    No.
19        Q    Do you know if you still have your
20   text messages from the year 2019?
21        A    No.
22        Q    Did you review text messages from
23   the year 2020?
24        A    No.
25        Q    Do you know if you still have your
```

Veritext Legal Solutions
346-293-7000

MARK VUKSANOVICH

1
2    text messages from the year 2020?

3         A    No.

4         Q    Did you apply any search terms to

5    whatever universe of text messages is in

6    your possession to identify text messages?

7         A    No.

8         Q    Have you ever applied search terms

9    in your email in-box to identify emails?

10        A    No.

11        Q    Have you ever been provided any

12   search terms to apply to your electronic

13   data in order to identify relevant

14   documents?

15        A    No.

16        Q    Okay.  But you were provided this

17   document with a request for production of

18   documents, correct?

19        A    Yes.

20        Q    Understood.  And at the time you

21   were provided this document, did you

22   understand that you were a plaintiff in the

23   litigation?

24        A    Yes.

25        Q    And did you understand that this

MARK VUKSANOVICH

1
2      cabin air quality?

3           A     Yes.

4           Q     Who have you communicated with in

5      your family?

6           A     Well, my mother for sure.

7           Q     And what is your mom's name?

8           A     Laura.

9           Q     Okay.  Is she also a Vuksanovich?

10          A     No.  Her maiden name was

11     Stephenson -- or Pulatti (ph).  I'm sorry.

12     I can't remember.  She just remarried not

13     too long ago.

14          Q     Congratulations to her.

15                And have you communicated with

16     anyone else, besides your mother Laura,

17     about cabin air quality?

18          A     Yes.

19          Q     Who in your family have you

20     communicated with?

21          A     I would say the same people that I

22     already discussed.

23          Q     So that includes your father?

24          A     My immediate family, her immediate

25     family.  We've had several communications.

Veritext Legal Solutions
346-293-7000

```
 1                    MARK VUKSANOVICH

 2        Q     Your uncle still?

 3        A     I'm sorry?

 4        Q     Does this also include your uncle?

 5        A     Yes.  Yes.

 6        Q     What is your uncle's name?

 7        A     Larry Pulatti.

 8        Q     Okay.  Pulatti.

 9              Were any of these communications

10   with your family related to cabin air

11   quality written communications?

12        A     Yes.

13        Q     In what form?

14        A     So the social media links that I

15   believe were made available to you.  I've

16   shared some of those stories.  Not my story,

17   but I have shared that kind of information

18   to my family so they understand a little bit

19   of what we have been dealing with.

20        Q     Have you sent those via text

21   message?

22        A     I can't recall.

23        Q     Have you sent them via email?

24        A     I don't believe so.

25        Q     Have you shared them in a form
```

Veritext Legal Solutions
346-293-7000

```
 1                    MARK VUKSANOVICH
 2   other than social media?
 3        A    Yes.  I would say text messages.
 4   I probably have sent links.
 5        Q    Okay.  So is it -- is my
 6   understanding correct that you have likely
 7   sent links to your family via text message,
 8   you just don't specifically recall each
 9   message?
10        A    Yes.
11        Q    And would you have a way to go
12   find those messages?
13        A    I believe so, yes.
14        Q    Okay.  Have you made any efforts
15   to find those text up until this point?
16        A    No.
17        Q    Okay.  So we've discussed your
18   family; same questions for friends.
19             Have you had communications with
20   friends concerning cabin air quality?
21        A    Yes.
22        Q    Kyle?
23        A    Yes.
24        Q    Any other friends?
25        A    I can't recall specifically.  He
```

Page 38

                    MARK VUKSANOVICH

1

2      Q    Yes.  Have you had communications

3  with any persons related to the impact of

4  the incidents at issue in this litigation on

5  your marriage?

6      A    Yes.

7      Q    Who have you communicated with?

8      A    The same list that I provided

9  earlier, friends and family.  As far as I

10  can recall, it would be just that.  I'm not

11  a socialite.

12      Q    Not a socialite or an

13  influencer --

14      A    Right.

15      Q    -- we've decided.

16           So have any of these

17  communications been written communication?

18      A    No.

19      Q    So you have not -- is your

20  testimony that you have not exchanged text

21  messages with Kyle related to the way

22  that --

23      A    So let me clarify.  You said

24  "written."

25           Are you also talking about text

```
 1                    MARK VUKSANOVICH

 2   messages?

 3        Q     Let me -- thank you for asking.

 4   Yes, written including electronic

 5   communications.

 6        A     Okay.

 7        Q     Have you exchanged any nonverbal

 8   communications?

 9        A     Yes.

10        Q     What types of nonverbal

11   communications have you --

12              (Cross talk.)

13        A     Text messages for the most part,

14   and the social media.

15        Q     Have any of your social media

16   posts related to the impact of these

17   incidents on your marriage?

18        A     No.

19        Q     Okay.  Have any --

20        A     Very private.

21        Q     I just wanted to clarify to make

22   sure that I --

23        A     I understand.

24        Q     -- was getting this right.

25              Have any of your text messages
```

Page 41

MARK VUKSANOVICH

1

2    lets them out, feeds them.  She also spends

3    a lot of time in her office.  She takes very

4    good notes of her day-to-day routine.  And I

5    know she takes a lot of breaks, because she

6    can't really spend a lot of time on a

7    computer in her office.

8         Q    Has she always taken notes of her

9    day-to-day routine since you've been

10   married?

11        A    I believe so, yes.

12        Q    Okay.

13        A    To my knowledge, it appears like

14   she's -- she has to take notes because she

15   is -- she does have a problem with

16   short-term memory.  So she writes things

17   down, schedules, appointments, what kind of

18   things she needs to take, her regimen of

19   supplements, conversations with her doctors

20   and just, as far as, you know, that, she's

21   very meticulous.

22        Q    And she keeps those notes in her

23   office?

24        A    Yes.

25        Q    Does she go to doctors'

MARK VUKSANOVICH

1

2      Q     You have a separate letter that

3   you wrote to the Social Security agency?

4      A     Yes.

5      Q     Do you -- do you recall --

6      A     Yes.

7      Q     -- when you wrote the letter to

8   the Social Security agency?

9      A     Specifically, no.  I -- there were

10  some forms that we had to fill out for the

11  Social Security that -- that's the forms I'm

12  referring to, that's the letters.

13     Q     Would you be able to locate those

14  forms if you needed to?

15     A     Yes.

16     Q     Have you written any other letters

17  or forms related to your wife's condition?

18     A     Not that I can recall, no.  This

19  is the one that was the separate letter but

20  I -- like I said, the Social Security

21  letters, I remember writing some things to

22  Social Security.  I take that back.  There

23  may have been a letter that I helped author

24  to get some help when we had a storm.  I

25  can't remember what the name of the agency

Page 123

```
 1                        MARK VUKSANOVICH

 2                        CERTIFICATE

 3          STATE OF NEW YORK )

 4                          )ss:

 5          COUNTY OF RICHMOND)

 6                  I, DANIELLE GRANT, a Certified

 7                  Shorthand Reporter and Notary Public

 8                  within and for the State of New

 9                  York, do hereby certify:

10                  That MARK VUKSANOVICH, the witness

11                  whose deposition is hereinbefore set

12                  forth, was duly sworn by me and that

13                  such deposition is a true record of

14                  the testimony given by such witness.

15                  I further certify that I am not

16                  related to any of the parties to

17                  this action by blood or marriage and

18                  that I am in no way interested in

19                  the outcome of this matter.

20                  In witness whereof, I have hereunto

21                  set my hand this 6th day of

22                  November, 202
                                    Danielle Grant
23

                              DANIELLE GRANT

24

25

                                        Page 170
```

# Exhibit 02

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

KRISTI VUKSANOVICH and MARK
VUKSANOVICH,

                    Plaintiffs,

v.

AIRBUS AMERICAS, INC., and AIRBUS S.A.S.,

                    Defendants.

Civil Action No: 21-cv-3454-KPF

<u>PLAINTIFFS' RESPONSES TO DEFENDANTS' FIRST REQUESTS FOR THE
PRODUCTION OF DOCUMENTS</u>

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, the Plaintiffs, Kristi

Vuksanovich and Mark Vuksanovich, hereby respond to the Defendants Airbus Americas, Inc.

and Airbus S.A.S.'s (hereinafter "Defendants" or "Airbus") first requests for the production of

documents as follows:

**<u>REQUEST No. 1</u>**: All documents identified or requested to be identified in your responses to
Defendants' Interrogatories.

**<u>RESPONSE No. 1</u>:**

Not applicable. Discovery is incomplete and ongoing, and as such Plaintiff is in the process of
gathering relevant and responsive records. Moreover, Plaintiff reserves the right to supplement her
response to the interrogatories and this request and assert further objections.

**<u>REQUEST No. 2</u>**: All documents used to assist in preparing your responses to Defendants'
Interrogatories.

**<u>RESPONSE No. 2</u>**

Objection.  Plaintiff objects to this request on the grounds that it seeks the disclosure of attorney
work product, seeks the disclosure of documents prepared in anticipation of litigation and/or for trial,

1

seeks an expert opinion and/or otherwise exceeds the scope of permissible discovery pursuant to Fed. R. Civ. P. 26.

Plaintiff further objects to this request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, seeks the disclosure of collateral source information, seeks documents that are equally obtainable by the defendant, and/or otherwise exceeds the scope of permissible discovery pursuant to Fed. R. Civ. P. 26.

Notwithstanding the objections, Plaintiffs state that they have no responsive, non-privileged records in their custody or control. Discovery is incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Moreover, Plaintiff reserves the right to supplement her response to this request and assert further objections.

**REQUEST No. 3**: All documents you received or reviewed (from any source) regarding neurotoxins, organophosphates, carbon monoxide, carbon dioxide, volatile compounds, semi-volatile organic compounds, tricresyl phosphates, or N-phenyl-L-naphthylamine prior to the filing of the Complaint.

**RESPONSE No. 3**

Objection.  Plaintiff objects to this request on the grounds that it seeks the disclosure of attorney work product, seeks the disclosure of documents prepared in anticipation of litigation and/or for trial, seeks an expert opinion and/or otherwise exceeds the scope of permissible discovery pursuant to Fed. R. Civ. P. 26.

Plaintiff further objects to this request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, seeks the disclosure of collateral source information, seeks documents that are equally obtainable by the defendant, and/or otherwise exceeds the scope of permissible discovery pursuant to Fed. R. Civ. P. 26.

Plaintiffs have made no determination as to which articles/sources they will use at the time of trial and reserve the right to supplement as per the pretrial order of the court and rules of civil procedure. Discovery is incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Moreover, Plaintiff reserves the right to supplement her response to this request and assert further objections.

**REQUEST No. 4**:  Every bill or invoice from every health care provider who provided any services, treatment, or prescribed any medication for any health-related condition or injury that you contend was caused or contributed to by the Incidents or for which you seek to hold Defendants liable.

**RESPONSE No. 4:**

Plaintiff's treatment and discovery is incomplete and ongoing, and as such Plaintiff reserves the right to supplement the response to this Request and assert objections. Plaintiff refers Defendants

to the documents provided in response to the records requests that she authorized Defendants to request and obtain.

**REQUEST No. 5**: Every bill, invoice, statement, receipt, and cancelled check for or relating to any expense incurred by you as a result of the Incidents, or for which you otherwise contend that Defendants are or should be liable.

**RESPONSE No. 5**:

Plaintiff refers the Defendants to her response to Request No. 4.

**REQUEST No. 6**: Each and every paycheck, disability check, or statement of your earnings for the period of June 2016 to the Present.

**RESPONSE No. 6**:

Plaintiff objects to this Request as it is overly broad and unduly burdensome. Plaintiff further objects to the extent it seeks information not reasonably calculated to lead to discovery of admissible evidence. Additionally, discovery is incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Moreover, Plaintiffs reserve the right to supplement her response and assert objections.

Notwithstanding the objections, Plaintiff produces the following:

- 2016 W-2 and Earnings Summary
- 2017 W-2 and Earnings Summary
- 2018 W-2 and Earnings Summary
- 2019 W-2 and Earnings Summary
- 2020 W-2 and Earnings Summary
- 2021 W-2 and Earnings Summary

The aforementioned W-2 forms are attached hereto as **Exhibit 1**. Plaintiffs also produce the following:

- Social Security Administration Notice of Award, dated October 21, 2019, attached as **Exhibit 2**.

**REQUEST No. 7**: Each and every statement of earnings, or other accounting, of any self-employment income you have received from any sole proprietorship, corporation, limited liability company, or similar business entity for the period of June 2016 to the present.

**RESPONSE No. 7:**

Discovery is incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Moreover, Plaintiff reserves the right to supplement her response to this request and assert objections.

**REQUEST No. 8**: Each and every document concerning, referring or relating to any loss of time from your career or occupation, or any loss of earnings, that you contend you have experienced as a result of the Incidents.

**RESPONSE No. 8:**

Objection. Plaintiff objects to this Request on the grounds that it is overly broad and unduly burdensome. The request is also vague. Further, Plaintiff objects to the extent the Defendant seeks information not reasonably calculated to lead to discovery of admissible evidence. Additionally, discovery is incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Plaintiff reserves the right to supplement the response to this request and assert further objections.

Notwithstanding the objections, the Plaintiff refers the Defendants to the documents provided in response to the medical records requests that she authorized the Defendants to request and obtain.

**REQUEST No. 9**: All documents regarding any medical diagnosis that you have received relating to any symptoms that you attribute to the Incidents. This request includes but is not limited to the diagnoses referenced in paragraphs 81-83, 85-86, and 88 of the Complaint.

**RESPONSE No. 9:**

Objection. Plaintiff objects to this request on the grounds that it seeks the disclosure of attorney work product, seeks the disclosure of documents prepared in anticipation of litigation and/or for trial, seeks an expert opinion and/or otherwise exceeds the scope of permissible discovery pursuant to Fed. R. Civ. P. 26.

Additionally, Plaintiff's medical treatment and discovery are incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Plaintiff reserves the right to supplement her response to this request and assert further objections.

The Plaintiff refers the Defendants to the documents provided in response to the medical records requests that she authorized the Defendants to request and obtain.

**REQUEST No. 10**:  All documents regarding all testing of any kind that you have undergone, or are scheduled to undergo, relating to symptoms that you attribute to the Incidents, including but not limited to all test results. This request includes but is not limited to the tests referenced in paragraphs 79 and 82-86 of the Complaint.

**RESPONSE No. 10:**

Objection. Plaintiff objects to this request on the grounds that it seeks the disclosure of attorney work product, seeks the disclosure of documents prepared in anticipation of litigation and/or for trial, seeks an expert opinion and/or otherwise exceeds the scope of permissible discovery pursuant to Fed. R. Civ. P. 26.

Plaintiff's medical treatment and discovery are incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Plaintiff reserves the right to supplement her response to this request and assert further objections.

Notwithstanding the objections, Plaintiff refers Defendants to the AVSA Lab Analytical Report, attached as **Exhibit 22**.

Plaintiff further refers Defendants to the documents provided in response to the medical records requests that she authorized Defendants to request and obtain.

**REQUEST No. 11**: All documents concerning medical treatment received by you for any injuries allegedly resulting from the Incidents, including but not limited to any medications or prescription drugs.

**RESPONSE No. 11:**

Objection. The Plaintiff objects to this Request on the grounds that it seeks information not reasonably calculated to lead to discovery of admissible evidence. Additionally, the Plaintiff's medical treatment and discovery are incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Moreover, Plaintiff reserves the right to supplement her response to this request and assert further objections.

The Plaintiff refers the Defendants to the documents provided in response to the medical records requests that she authorized the Defendants to request and obtain.

**REQUEST No. 12**: All communications between you and any health care provider or medical entity from the date of the Incidents to the present.

**RESPONSE No. 12:**

Objection. Plaintiff objects to this request to the extent any and all privileges apply. Plaintiff further objects as the Request is overly broad and unduly burdensome as it is not tailored to any specific communications. Plaintiff's medical treatment and discovery are incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Moreover, Plaintiff reserves the right to supplement the response to this request and assert further objections.

Plaintiff refers Defendants to the documents provided in response to the medical records requests that she authorized Defendants to request and obtain.

**REQUEST No. 13**: All "specific medical protocols" provided to you by any physician, including those referenced in paragraphs 78-79 of the Complaint.

**RESPONSE No. 13:**

Plaintiff's medical treatment and discovery are incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Moreover, Plaintiff reserves the right to supplement her response to this request and assert objections.

Plaintiff refers Defendants to the documents provided in response to the medical records requests that she authorized Defendants to request and obtain.

**REQUEST No. 14**: Any and all medical records, or reports from your physicians, hospitals, other health care providers, or medical insurance companies concerning any diagnosis, examination, treatment, and prescription and or over-the-counter medicine prescribed to you for the past 10 years.

**RESPONSE No. 14:**

Objection. Plaintiff objects to this Request on the grounds that it seeks information not reasonably calculated to lead to discovery of admissible evidence. Additionally, discovery is incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Moreover, Plaintiff reserves the right to supplement her response to this request and assert further objections.

Plaintiff refers the Defendants to the documents provided in response to the medical records requests that she authorized the Defendants to request and obtain.

**REQUEST No. 15**: A copy of your medical health insurance coverage and/or pharmacy benefits card(s) for the past ten years including Medicare/Medicaid. If the card is no longer available for any program, then other documentation showing the program name, membership, membership number, and benefits.

**RESPONSE No. 15:**

Objection. Plaintiff objects to this Request on the grounds that it seeks information not reasonably calculated to lead to discovery of admissible evidence. Notwithstanding the objection, Plaintiff refers the Defendants to its answer to Interrogatory No. 2 as well as the documents provided in response to the medical records requests that the Plaintiff authorized the Defendants to request and obtain.

**REQUEST No. 16**: All documents concerning your medical expenses and charges (including but not limited to bills, billing statements, and invoices) incurred in connection with the Incidents, regardless of whether they have been paid or who paid them.

**RESPONSE No. 16:**

Discovery is incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Moreover, Plaintiff reserves the right to supplement her response to this request.

Plaintiff refers Defendants to the documents provided in response to the medical records requests that Plaintiff authorized Defendants to request and obtain.

**REQUEST No. 17**: All documents that support or relate to any economic damages you claim to have sustained or incurred as a result of the Incidents.

**RESPONSE No. 17:**

Plaintiff objects to this request on the grounds that it is overly broad and unduly burdensome. Notwithstanding the objection, Plaintiff refers the Defendants to the medical bills and personal financials provided as well as the documents provided in response to the records requests that Plaintiff authorized the Defendants to request and obtain.

Discovery is incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Moreover, Plaintiff reserves the right to supplement her response to this request and assert further objections.

**REQUEST No. 18**: All communications, in any manner or form, made or received by you concerning the Incidents or any claim made in the Complaint. This includes communications in news articles, social media postings, emails, text messages, video recordings, journal entries, medical records, diaries, notes, workers compensation filings, union benefit claims, legal filings and discovery responses, chronologies, and similar recitations.

**RESPONSE No. 18:**

Objection. Plaintiff objects to this request on the grounds that it is overly broad and unduly burdensome. Plaintiff also objects to the extent the Request seeks records protected by the attorney client privilege or the work product doctrine or are otherwise not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding the objections, Plaintiff refers the Defendants to the following:

      Please see Exhibits 3 – 57, attached hereto.

Discovery is incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Moreover, Plaintiff reserves the right to supplement her response to this request and assert further objections.

**REQUEST No. 19**: All communications, in any manner or form, made or received by you concerning aircraft cabin air quality. This includes communications in news articles, social media postings, emails, text messages, video recordings, journal entries, medical records, diaries, notes,

workers compensation filings, union benefit claims, legal filings and discovery responses, chronologies, and similar recitations.

**RESPONSE No. 19:**

Objection.  Plaintiff objects to this request on the grounds that it seeks the disclosure of attorney work product, seeks the disclosure of documents prepared in anticipation of litigation and/or for trial, seeks an expert opinion and/or otherwise exceeds the scope of permissible discovery pursuant to Fed. R. Civ. P. 26.

Plaintiff further objects to this request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, seeks documents that are equally obtainable by the defendant, and/or otherwise exceeds the scope of permissible discovery pursuant to Fed. R. Civ. P. 26.

Notwithstanding the objections, Plaintiff refers the Defendants to the Response to Request No. 18.

Discovery is incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Moreover, Plaintiff reserves the right to supplement her response to this request and assert further objections.

**REQUEST No. 20**: All communications, in any manner or form, made or received by you concerning your attendance at work.  This includes communications in news articles, social media postings, emails, text messages, video recordings, journal entries, medical records, diaries, notes, workers compensation filings, union benefit claims, legal filings and discovery responses, chronologies, and similar recitations.

**RESPONSE No. 20:**

Objection. Plaintiff objects to this request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, seeks documents that are equally obtainable by the defendant, and/or otherwise exceeds the scope of permissible discovery pursuant to Fed. R. Civ. P. 26.

Notwithstanding the objections, Plaintiff refers the Defendants to JetBlue Airways for a complete copy of the Plaintiff's employment records. Please also see Exhibits 30, 31, 57, and 58.

Discovery is incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Moreover, Plaintiff reserves the right to supplement her response to this request and assert further objections.

**REQUEST No. 21**: All communications, in any manner or form, made or received by you concerning the effect that the Incidents have had on your marriage, including any communications relating to loss of companionship. This includes communications in news articles, social media postings, emails, text messages, video recordings, journal entries, medical records, diaries, notes,

workers compensation filings, union benefit claims, legal filings and discovery responses, chronologies, and similar recitations.

**RESPONSE No. 21:**

Objection. Plaintiff objects to this request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, seeks documents that are equally obtainable by the defendant, and/or otherwise exceeds the scope of permissible discovery pursuant to Fed. R. Civ. P. 26.

Notwithstanding the objections, Plaintiff states that discovery is incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Moreover, Plaintiff reserves the right to supplement her response to this request and assert further objections.

**REQUEST No. 22**:  All documents that support your claim for loss of consortium.

**RESPONSE No. 22:**

Objection. Plaintiff objects to this request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, seeks documents that are equally obtainable by the defendant, and/or otherwise exceeds the scope of permissible discovery pursuant to Fed. R. Civ. P. 26.

Notwithstanding the objections, Plaintiff refers Defendants to the documents provided in response to the records requests that they authorized the Defendants to request and obtain.

Discovery is incomplete and ongoing, and as such Plaintiffs are in the process of gathering relevant and responsive records. Moreover, the Plaintiffs reserve the right to supplement their response to this request and state objections.

**REQUEST No. 23**: All documents regarding any airplane travel you took after June 16, 2017 through the present.

**RESPONSE No. 23:**

Objection. Plaintiff objects to this request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, seeks documents that are equally obtainable by the defendant, and/or otherwise exceeds the scope of permissible discovery pursuant to Fed. R. Civ. P. 26.

Notwithstanding the objections, Plaintiff refers the Defendants to Exhibits 43, 48, and 51. Plaintiff further refers Defendants to JetBlue Airways for a complete copy of Plaintiff's employment and travel records.

9

Discovery is incomplete and ongoing, and as such the Plaintiff is in the process of gathering relevant and responsive records. Moreover, the Plaintiff reserves the right to supplement the response to this request and assert further objections.

**REQUEST No. 24**: Color copies of all social media website content shared on accounts you have used and/or maintained that concern the Incidents, your health, aircraft cabin air, your attendance at work, or any claim made in the Complaint, including but not limited to all expanded posts (including likes and comments), photographs, messages, notes, and comments on your social media accounts regarding the Incident.

**RESPONSE No. 24:**

Objection. Plaintiff objects to this Request on the grounds that it is overly broad and unduly burdensome. Plaintiff objects to this Request on the grounds that it seeks information not reasonably calculated to lead to discovery of admissible evidence. Additionally, discovery is incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Moreover, Plaintiff reserves the right to supplement her response to this request and assert further objections.

**REQUEST No. 25**: All documents related to any worker's compensation claim filed by you related to the Incidents.

**RESPONSE No. 25:**

Objection. Plaintiff objects to this request on the grounds that it seeks the disclosure of attorney work product, seeks the disclosure of documents prepared in anticipation of litigation and/or for trial, seeks an expert opinion and/or otherwise exceeds the scope of permissible discovery pursuant to Fed. R. Civ. P. 26.

Plaintiff further objects to this request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, seeks documents that are equally obtainable by the defendant, and/or otherwise exceeds the scope of permissible discovery pursuant to Fed. R. Civ. P. 26.

Notwithstanding the objections, Plaintiff refers Defendants to the documents provided in response to the records requests that they authorized the Defendants to request and obtain.

Discovery is incomplete and ongoing, and as such Plaintiffs are in the process of gathering relevant and responsive records. Moreover, the Plaintiffs reserve the right to supplement their response to this request and state objections.

**REQUEST No. 26**: Copies of all internet browser history on any of your devices for the past 5 years related to aircraft cabin air, fume events, bleed air systems, organophosphate induced delayed neuropathy, neurotoxins, organophosphates, carbon monoxide, carbon dioxide, volatile compounds, semi-volatile organic compounds, tricresyl phosphates, and N-phenyl-L-naphthylamine.

10

**RESPONSE No. 26:**

Objection. Plaintiff objects to this Request on the grounds that it seeks information not reasonably calculated to lead to discovery of admissible evidence. Further, Plaintiff objects as the Request is overly broad and unduly burdensome. Plaintiff reserves the right to supplement the response to this request and assert further objections.

**REQUEST No. 27**: All evidence documenting the Incidents or concerning the Incidents including photographs, video or sound recordings, witness statements, diary entries or other notes, drawings, inspections, records, and samples.

**RESPONSE No. 27:**

Objection.  Plaintiff objects to this Request to the extent it seeks documents protected by the attorney-client privilege and the work product doctrine. The Plaintiff notes that discovery is incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Moreover, Plaintiff reserves the right to supplement the response to this request and assert further objections.

Notwithstanding the objections, Plaintiff refers Defendants to the response to Request No. 18.

**REQUEST No. 28**: Exhibits you anticipate potentially offering at trial, including all documents identified in your Rule 26 Initial Disclosures.

**RESPONSE No. 28:**

Plaintiff's medical treatment and discovery are incomplete and ongoing, and as such Plaintiff has not made determinations on trial exhibits. Further, the Plaintiff is in the process of gathering relevant and responsive records. Moreover, Plaintiff reserves the right to supplement her response to this request and assert further objections.

**REQUEST No. 29**: All documents relating to any investigation conducted by you or anyone on your behalf (excluding attorney work product) concerning the Incidents.

**RESPONSE No. 29:**

Objection. Plaintiff objects to the extent the Request seeks records protected by the attorney client privilege or the work product doctrine or are otherwise not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to this request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, seeks documents that are equally obtainable by the defendant, and/or otherwise exceeds the scope of permissible discovery pursuant to Fed. R. Civ. P. 26.

Notwithstanding the objections, Plaintiff states that discovery is incomplete and ongoing, and as such Plaintiffs are in the process of gathering relevant and responsive records. Moreover, the Plaintiffs reserve the right to supplement their response to this request and assert further objections.

**REQUEST No. 30**: All communications with the flight attendants' union or its representatives concerning the Incidents or aircraft cabin air.

**RESPONSE No. 30:**

Plaintiff has no responsive records in her control or custody. Plaintiff is in the process of gathering relevant and responsive records. Plaintiff reserves the right to supplement her response to this request and assert objections.

**REQUEST No. 31**: For the period from 2017 to the Present, produce each and every document concerning, referring or relating to any personal injury claim (including formal and semiformal claims, workers compensation claims, litigations, or settlements) which you have asserted or in which you were involved.

**RESPONSE No. 31:**

Objection. Plaintiff objects to this Request as it is overly broad and unduly burdensome. Plaintiff objects to this Request to the extent it seeks documents protected by the attorney-client privilege and the work product doctrine. Plaintiff further objects to the extent it seeks information not reasonably calculated to lead to discovery of admissible evidence, seeks documents that are equally obtainable by the defendant, and/or otherwise exceeds the scope of permissible discovery pursuant to Fed. R. Civ. P. 26.

Notwithstanding the objections, Plaintiff refers, in part, to its response to Request No. 18 which contains communications with Plaintiff's insurers. Plaintiff notes that discovery is incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Moreover, Plaintiff reserves the right to supplement her response to this request and assert further objections.

**REQUEST No. 32**: All communications between you and any other person regarding the Incidents or any other alleged "fume event" as the phrase is used in paragraphs 25 and 36 of the Complaint, involving any aircraft.

**RESPONSE No. 32:**

Objection. Plaintiff objects to this Request as it is overly broad and unduly burdensome. Plaintiff objects to this Request to the extent it seeks documents protected by the attorney-client privilege and the work product doctrine. Plaintiff further objects to the extent it seeks information not reasonably calculated to lead to discovery of admissible evidence, seeks documents that are equally obtainable by the defendant, and/or otherwise exceeds the scope of permissible discovery pursuant to Fed. R. Civ. P. 26.

Notwithstanding the objections, Plaintiff refers the Defendants to the Response to Request No. 18. Plaintiff notes that discovery is incomplete and ongoing. The Plaintiff is in the process of gathering

relevant and responsive records. Plaintiff reserves the right to supplement the response to this request and assert further objections.

**REQUEST No. 33**: All documents showing or reflecting your work attendance record from June 2016 to the present.

**RESPONSE No. 33:**

Plaintiff refers the Defendants to JetBlue Airways for a complete copy of the Plaintiff's employment records. Please see Exhibits 30, 31, 57, and 58.

Discovery is incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Moreover, Plaintiff reserves the right to supplement her response to this request and assert objections.

**REQUEST No. 34**: All documents showing or concerning any performance or other evaluation you received from your employer for the past 10 years.

**RESPONSE No. 34:**

Plaintiff refers Defendants to JetBlue Airways for a complete copy of the Plaintiff's employment records. Plaintiff refers Defendants to her Response to Request No. 33.

Discovery is incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Moreover, Plaintiff reserves the right to supplement her response to this request and assert objections.

**REQUEST No. 35**: All documents sufficient to show the make and model of any aircraft that Plaintiff Kristi Vuksanovich has worked or trained on during her career as a flight  attendant for Jet Blue or any other airline.

**RESPONSE No. 35:**

Objection.  The Plaintiff objects to this request on the grounds that it seeks the disclosure of attorney work product, seeks the disclosure of documents prepared in anticipation of litigation and/or for trial, seeks an expert opinion and/or otherwise exceeds the scope of permissible discovery pursuant to Fed. R. Civ. P. 26.

Plaintiff further objects to this request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, seeks documents that are equally obtainable by the defendant, and/or otherwise exceeds the scope of permissible discovery pursuant to Fed. R. Civ. P. 26.

Notwithstanding the objections, Plaintiff refers Defendants to JetBlue Airways for a complete copy of the Plaintiff's employment records.

Discovery is incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Moreover, Plaintiff reserves the right to supplement her response to this request and assert further objections.

**REQUEST No. 36**: All documents supporting your contention that "airplanes currently manufactured by these defendants could be modified to lessen and/or eliminate the risk of fume events entirely without placing an undue burden on the manufacturer." *See* Complaint at ¶ 97.

**RESPONSE No. 36:**

Objection. The Plaintiff objects to this request on the grounds that it seeks the disclosure of attorney work product, seeks the disclosure of documents prepared in anticipation of litigation and/or for trial, seeks an expert opinion and/or otherwise exceeds the scope of permissible discovery pursuant to Fed. R. Civ. P. 26.

Notwithstanding the objection, discovery is incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Moreover, Plaintiff reserves the right to supplement her response to this request and assert further objections.

**REQUEST No. 37**: All alleged warranties referenced in paragraphs 108-111 of the Complaint.

**RESPONSE No. 37:**

Objection. Plaintiff objects to this request on the grounds that it seeks the disclosure of attorney work product, seeks the disclosure of documents prepared in anticipation of litigation and/or for trial, seeks an expert opinion and/or otherwise exceeds the scope of permissible discovery pursuant to Fed. R. Civ. P. 26.

Notwithstanding the objection, Plaintiff refers the Defendants to its own records. Discovery is incomplete and ongoing, and as such Plaintiff is in the process of gathering relevant and responsive records. Moreover, Plaintiff reserves the right to supplement her response to this request and assert further objections.

The Plaintiffs,

KRISTI & MARK VUKSANOVICH,

Plaintiffs' Attorneys,

Pro Hac Vice Counsel,

/s/    John T. Martin

John T. Martin (M.A. BBO #676344)
KECHES LAW GROUP
100 Front Street
Suite 2010
Worcester, MA 01608
(T) (508)593-3999
(E) jmartin@kecheslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below a copy of the foregoing Responses to the Request for the Production of Documents were served by electronic mail upon all Counsel of Record.

Date: November 21, 2022    By: /s/ Ryan A. O'Neill